## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

08 CV 02034

| | |
|---|---|
| Robert Knox, Individually and On Behalf of All Others Similarly Situated, | )<br>)<br>) |
| | ) |
| Plaintiff | ) |
| | ) |
| , vs. | ) |
| | ) |
| SUNOPTA INC., STEVEN R. BROMLEY, JOHN H. DIETRICH and STEPHEN R. BRONFMAN, | )<br>)<br>) |
| | ) |
| Defendants. | ) |

CLASS ACTION COMPLAINT

**JURY TRIAL DEMANDED**

RECEIVED
FEB 29 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, Robert Knox ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' press releases, Securities and Exchange Commission ("SEC") filings by SunOpta, Inc. ("SunOpta" or the "Company") and media reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a securities class action on behalf of Plaintiff and all other persons or entities, except for Defendants, who purchased or otherwise acquired SunOpta's securities (the "Class") during the period August 8, 2007 and through January 25, 2008, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     SunOpta operates primarily in the United States and Canada. It operates in three groups: SunOpta Food, Opta Minerals, and SunOpta BioProcess. SunOpta Food group produces, packages, markets, and distributes a range of natural, organic, kosher, and specialty food products and ingredients with a focus on soy, corn, sunflower, fruit, oat, fiber, and other natural and organic food products. Opta Minerals group processes, sells, and distributes silica free loose abrasives, roofing granules, industrial minerals, and specialty sands, as well as recycles inorganic materials for the foundry, steel, roofing shingles, and bridge and ship cleaning industries. SunOpta BioProcess provides a range of research and development and engineering services and owns various patents on its proprietary steam explosion technology, as well as designs and subcontracts

- 1 -

the manufacture of these systems for processing non-woody fibers for use in the paper, food, and biofuel industries.

3.     During the Class Period, certain officers and directors of SunOpta entered into a manipulative scheme to defraud investors that was revealed on January 24, 2008. After the market closed on that day, the Company shocked investors when it reported its anticipated financial results for 2007, disclosing for the first time that the Company would incur write-downs and provisions for losses in the range of $12 million to $14 million, that SunOpta would likely restate financial r esults from previous quarters, and that the Company had engaged an independent auditor to assess its accounting controls. The January 24 release attributed the write-downs to inventory issues within the Company's Fruit Group's berry operations, as well as difficulties in collecting for services and equipment provided to a customer under the terms of an existing equipment supply contract within the SunOpta BioProcess Group. The Company also stated that it was not able to provide revenue and earnings guidance for 2008.

4.     Upon this revelation, the Company's shares declined $3.51 per share, or 36.72 percent, to close on January 25, 2008 at $6.05 per share, on unusually heavy trading volume.

5.     Leading up to the January 24th disclosure, Defendants made false statements and/or failed to disclose material adverse facts about the Company's financial performance, business relationships, and prospects. Specifically, Defendants failed to disclose or indicated the following:

> a. the Company failed to reserve for losses in the value of its inventory and uncollected accounts receivables, which resulted in an overstatement of the Company's earnings;
>
> b. the Company falsely reported that it had adequate accounting controls; and

- 2 -

      c. the Company falsely reported that its financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP").

6.     During the class period, certain Defendants took advantage of the artificially inflated price of the Company's securities and completed significant self-dealing transactions, including a large insider offering that allowed Defendant Stephen R. Bronfman, then a director in the Company, to dispose of over 4.5 million shares for proceeds of over $60 million. In total, 4,636,250 inflated shares of the Company's stock were sold by insiders for gross proceeds of $61,177,377.

7.     The Company's financial statements during the Class Period were materially false and misleading. Because of Defendants' wrongful acts and omissions and the resultant sharp decline in the value of the Company's securities, Plaintiff and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     Jurisdiction is conferred by §27 of the Securities Exchange Act (the "Act"). The claims asserted herein arise under §§10(b) and 20(a) of the Act and Rule 10b-5. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1337, and §27 of the Act.

9.     Venue is proper in this District pursuant to §27 of the Act and 28 U.S.C. §1391(b). SunOpta is a Canadian corporation. As such, pursuant to 28 U.S.C. §1391(d), SunOpta may be sued in any District of the United States. SunOpta has sufficient minimum contacts with the Southern District of New York because SunOpta common stock is traded on the NASDAQ National Market ("NASDAQ") and the Company does significant business in this District.

10.    In connection with the acts and conduct alleged herein, Defendants, directly and

indirectly, used the means and instrumentalities of interstate commerce, including the United States mails and the facilities of the national securities exchanges.

## PARTIES

11.    Plaintiff Robert Knox ("Plaintiff") resides in Parker, Colorado. Plaintiff purchased shares of SunOpta stock on the NASDAQ at artificially inflated prices during the Class Period. Plaintiff was damaged as undisclosed facts became known, and the artificial inflation was removed from the stock price as set forth in the accompanying certification, which is incorporated by reference herein.

12.    Defendant SunOpta is a Canadian corporation with its headquarters located at 2838 Bovaird Drive West, Brampton, Ontario, Canada L7A 0H2.

13.    Defendant Steven R.  Bromley ("Bromley") was, at all relevant times, the Company's President, Chief Executive Officer ("CEO"), Chief Operating Officer ("COO") and a member of the Board of Directors.

14.    Defendant John H.  Dietrich ("Dietrich") was, at all relevant times, the Company's Vice President and Chief Financial Officer ("CFO").

15.    Defendant Stephen R.  Bronfman ("Bronfman") was, at all relevant times, a member of the Company's Board of Directors.

16.    Defendants Bromley, Dietrich, and Bronfman are referred to herein collectively as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of SunOpta's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each Individual Defendant was provided with copics of the Company's reports and press releases alleged herein to be misleading prior to or shortly after

- 4 -

their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.

17.    Because of their positions and access to material non-public information available to them but not to the public, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the affirmative representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein, as each was either made by the particular Individual Defendants or were "group-published" information, the result of the collective actions of the Individual Defendants.

18.    In addition to the above-described involvement, each Individual Defendant had knowledge of SunOpta's problems.    Defendant Dietrich, as CFO, reported the Company's financial results to stock analysts, investors and the market.  Communications with the market, as well as internal reports showing SunOpta's forecasted and actual earnings were prepared under his direction.  Defendants Bronfman, as a director, and Bromley, as CEO, necessarily knew, and then falsely communicated the Company's earnings performance and prospects to analysts, investors and the market. Bronfman, in particular, realized a huge windfall from the fraudulent statements and omissions.    Each Individual Defendant sought to demonstrate that the Company was generating the earnings expected by the market.

## ALLEGATIONS

19.    On August 8, 2007, the beginning of the Class Period, the Company issued a press release entitled "SunOpta Announces Record Second Quarter Results; Revenues Increase 33.5% and Net Earnings Increase 55.4%." This release stated, in part:

> SunOpta Inc.  (SunOpta or the Company) (Nasdaq:STKL) (TSX:SOY) today *announced record results* for the second quarter ended June 30,

2007. All amounts are expressed in U.S. dollars.

The Company achieved record revenues for the three months ended June 30, 2007, realizing its 39th consecutive quarter of increased revenue growth versus the same quarter in the previous year. Revenues in the quarter increased by 33.5% to $207,977,000 as compared to $155,745,000 in the second quarter of 2007, led by a 37.9% increase in revenues within the Company's vertically integrated natural and organic food operations. The Company's revenue growth in the quarter reflects an internal growth rate of 16.2% on a consolidated basis and includes internal growth of 19.4% within the SunOpta Food Group.

*Operating income for the quarter increased to $11,402,000 as compared to $8,772,000 in 2006, driven by increases in segment operating income in all groups within the SunOpta Food Group and led by the SunOpta Grains and Foods Group and the SunOpta Distribution Group. Net earnings in the quarter were $6,750,000 or $0.11 per diluted common share as compared to $4,343,000 or $0.08 per diluted common share in the prior year.*

For the six months ended June 30, 2007 the company has recognized record revenues of $391,417,000 versus $289,057,000 in the same period of the prior year, an increase of 35.4%. *Net earnings for the period increased 44.1% to $10,600,000 or $0.17 per diluted common share as compared to $7,355,000 or $0.13 per diluted common share for the same period in 2006.*

\*      \*      \*

*Steve Bromley, President and Chief Executive Officer of SunOpta commented, "We are very pleased with our second quarter results, driven by solid internal growth of over 19% within our vertically integrated food operations. These earnings are consistent with our expectations for the second quarter and reflect our continued dedication to the growth of our business, both top line and bottom line. Based on these results, we are pleased to increase our annual revenue guidance to $775 to $800 million and confirm our net earnings guidance of $0.35 to $0.40 per share, including the dilutive impact of the additional shares issued during the first quarter."* [Emphasis added]

20.    On August 10, 2007, the Company filed its Quarterly Report with the SEC on Form 10-Q for the reporting period ended June 30, 2007. The Company's 10-Q was signed by Defendants Bromley and Dietrich and affirmed the Company's financial results announced in the August 8, 2007 earnings release. Also, this 10-Q stated, in part:

*The interim condensed consolidated financial statements of SunOpta Inc. (the Company) have been prepared in accordance with the instructions to Form 10-Q and Rule 10-01 of Regulation S-X and in accordance with accounting principles generally accepted in the United States.* Accordingly, these financial statements do not include all of the disclosures required by generally accepted accounting principles for annual financial statements.    In the opinion of management, all adjustments considered necessary for fair presentation have been included and all such adjustments are of a normal, recurring nature. Operating results for the six months ended June 30, 2007 are not necessarily indicative of the results that may be expected for the full year ending December 31, 2007. For further information, see the Company's consolidated financial statements, and notes thereto, included in the Annual Report on Form 10K for the year ended December 31, 2006.

The interim condensed consolidated financial statements include the accounts of the Company and its subsidiaries, and have been prepared on a basis consistent with the financial statements for the year ended December 31, 2006.    All significant intercompany accounts and transactions have been eliminated on consolidation.

*            *            *

Item 4. Controls and Procedures

*Under the supervision and with the participation of management, the Chief Executive Officer and Chief Financial Officer of the Company have evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures as of June 30, 2007, and, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that these controls and procedures are effective.* Disclosure controls and procedures are designed to ensure that information required to be disclosed by the Company in reports that it files or submits under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported, within the time periods specified in the Securities and Exchange Commission's rules and forms. Disclosure controls and procedures are also designed to ensure that information is accumulated and communicated to management, including the Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

Internal Control over Financial Reporting

There has been no change in the Company's internal control over financial reporting that occurred during the Company's quarter ended June 30, 2007 that has materially affected, or is reasonably likely to materially affect, the Company's internal control over financial reporting. [Emphasis added]

21.    The Company's 10-Q filed on August 10, 2007 also contained certifications signed

by Defendants Bromley and Dietrich, who stated:

> I, [Steve Bromley/John Dietrich] of SunOpta Corporation, certify that:
>
> (1) I have reviewed this quarterly report on Form 10-Q of SunOpta Inc. for the quarter ended June 30, 2006,
>
> (2) *Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;*
>
> (3) *Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report;*
>
> (4) The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a -15(f) and 15d -15(f) for the registrant and *we have*:
>
>> a. Designed such disclosure controls and procedures or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;
>>
>> b. *Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;*
>>
>> c. Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this quarterly report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by

- 8 -

Case 1:08-cv-02034-PAC    Document 1    Filed 02/29/2008    Page 10 of 35

this quarterly report based on such evaluation; and

d. Disclosed in this quarterly report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

(5) The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors:

a. All significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b. Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

\*      \*      \*

In connection with the quarterly report of SunOpta Inc. (the "Company"), on Form 10-Q for the period ended June 30, 2007 (the "Report"), **I, *Steve Bromley*,** President and Chief Executive Officer of the Company and **I, *John Dietrich*,** Vice President and Chief Financial Officer of the Company, ***each certify*** pursuant to 18 U.S.C. Section 1350, that to our knowledge:

1. the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

**2. the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.** [Emphasis added]

22.    These statements were false and misleading because, in fact, the Company's internal controls were deficient and the Company's financial statements did not fairly report the Company's earnings, in accordance with GAAP. The Company's earnings were overstated as a result of the Company's failure to properly reserve for losses in the value of its inventory and for bad debts.

23.    On November 6, 2007, the Company issued a press release entitled "SunOpta

Announces Record Third Quarter Results." This release stated, in part:

SunOpta Announces Record Third Quarter Results

Revenues Increase 41.4 Percent, *Net Earnings Increase 234.4 Percent*

SunOpta Inc. (SunOpta or the Company) (Nasdaq:STKL) (TSX:SOY) today announced record results for the third quarter ended September 30, 2007. All amounts are expressed in U.S. dollars.

The Company achieved record revenues for the three months ended September 30, 2007, realizing its 40th consecutive quarter of increased revenue growth versus the same quarter in the previous year. Revenues in the quarter increased by 41.4% to $205,666,000 as compared to $145,463,000 in the third quarter of 2006, led by a 45.2% increase in revenues within the Company's vertically integrated natural and organic food operations. The Company's revenue growth in the quarter reflects an internal growth rate of 21.6% on a consolidated basis and includes internal growth of 24.8% within the SunOpta Food Group.

*Operating income for the quarter increased 154.4% to $9,025,000 as compared to $3,547,000 in 2006, driven by increases in segment operating income within the SunOpta Food Group and led by the SunOpta Grains and Foods Group and the SunOpta Distribution Group. Net earnings for the quarter increased 234.4% to $5,096,000 or $0.08 per diluted common share as compared to $1,524,000 or $0.03 per diluted common share for the same period in the prior year. These results were realized despite significant costs and investment spending within the Company's healthy fruit snack business and SunOpta BioProcess Inc., and the unfavorable impact of the rising Canadian dollar on Canadian based overhead costs.*

*For the nine months ended September 30, 2007, the Company has achieved record revenues of $597,083,000 versus $434,520,000 in the same period of the prior year, an increase of 37.4%. Net earnings for the same period increased 76.8% to $15,696,000 or $0.25 per diluted common share as compared to $8,879,000 or $0.15 per diluted common share for the same period in 2006.*

In the third quarter, the SunOpta Food Group reported increased revenues of $184,402,000 as compared to $127,003,000 in the third quarter of 2006, a 45.2% increase. Segment operating income increased to $8,480,000 versus $2,625,000 in 2006, an increase of 223.1%. This increase was realized despite additional corporate cost allocations of

- 10 -

$1,657,000 versus the prior year. The increase in segment operating income reflects improved results in the SunOpta Grains and Foods Group due to strong sales of non-GMO and organic grains and grain based ingredients, increased sales of aseptic and extended shelf life packaged beverage products and is reflective of the significant turnaround that has been realized within the Group's sunflower operations. The SunOpta Ingredients Group realized improved segment operating income due to higher volumes of oat and soy fiber and dairy based ingredients plus the beneficial impact of process improvement and cost rationalization initiatives within the Group's processing operations. The SunOpta Distribution Group realized strong improvement in segment operating income due to continued growth in the natural and organic grocery sector combined with ongoing margin improvement initiatives. These increases were partially offset by a decline in Fruit Group segment operating income as the Group continued to invest in operational improvements and expanded capacity within its healthy fruit snack operations. These investments will significantly increase capacity and address ongoing processing inefficiencies which have significantly impacted this business during 2007. The healthy fruit snack business expects to realize improved results in the fourth quarter and a $2 million profit turnaround in 2008.

\*     \*     \*

**The Company remains well positioned for future growth** with working capital of $154,778,000 and total assets of $571,603,000. Capital additions in the quarter were $9,562,000 including approximately $1,500,000 for the acquisition of a soymilk manufacturing facility during the quarter, as compared to $2,143,000 for the same period in the prior year. The long-term debt to equity ratio at September 30, 2007 was 0.35:1:00, providing the Company financial resources to invest in internal growth, capital projects and execute on its acquisition program. Book equity per outstanding common share has grown to $4.11 from $3.94 at June 30, 2007.

*Steve Bromley, President and Chief Executive Officer of SunOpta commented, "We are quite pleased with our third quarter results, driven by solid internal growth of over 20% in the quarter. We continue to see strong growth prospects within each of our operating segments and are positioning the Company to realize these opportunities.* Last year we stated that our sunflower business would see a turnaround of $4,000,000 year over year and we are pleased to report that these results have actually increased by over $5,000,000 after just nine months. We expect that the significant investments being made within our healthy fruit snack business and SunOpta BioProcess Inc., which have impacted the third quarter operating results, are a wise

investment for the long-term and will provide excellent returns. Based on our results to date, *we are pleased to reconfirm our revenue guidance of $775,000,000 to $800,000,000 for fiscal 2007 as well as confirm our net earnings guidance in the range of $0.35 to $0.40 per share*, albeit at the lower end of the range, after absorbing the previously mentioned investment spending in our fruit snack operations and SunOpta BioProcess Inc." [Emphasis added]

24.    On November 8, 2007, SunOpta filed its Quarterly Report with the SEC on Form 10-Q for the period ended September 20, 2007. The Company's 10-Q was signed by Defendants Bromley and Dietrich and reaffirmed the Company's financial results announced on November 6, 2007. The Company's 10-Q contained certifications that were substantially similar to the certifications contained in ¶ 22. Also, the Company stated, in part:

> The interim condensed consolidated financial statements of SunOpta Inc. (the Company) have been prepared in accordance with the instructions to Form 10-Q and Rule 10-01 of Regulation S-X and in accordance with accounting principles generally accepted in the United States. Accordingly, these financial statements do not include all of the disclosures required by generally accepted accounting principles for annual financial statements. In the opinion of management, all adjustments considered necessary for fair presentation have been included and all such adjustments are of a normal, recurring nature. Operating results for the nine months ended September 30, 2007 are not necessarily indicative of the results that may be expected for the full year ending December 31, 2007. For further information, see the Company's consolidated financial statements and notes thereto, included in the Annual Report on Form 10K for the year ended December 31, 2006.

> Item 4. Controls and Procedures

> *Under the supervision and with the participation of management, the Chief Executive Officer and Chief Financial Officer of the Company have evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures as of September 30, 2007, and, based on their evaluation, the Chief Executive Offi cer and C hief Fi nancial Officer have concluded that these controls and procedures are effective.* Disclosure controls and procedures are designed to ensure that information required to be disclosed by the Company in reports that it files or submits under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported, within the time periods specified in the Securities and Exchange Commission's rules and forms.    Disclosure controls and procedures are also d esigned to ensure that info rmation is accumulated and communicated to management, including the Chief

Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

Internal Control over Financial Reporting

There has been no change in the Company's internal control over financial reporting that occurred during the Company's quarter ended September 30, 2007 that has materially affected, or is reasonably likely to materially affect, the Company's internal control over financial reporting. [Emphasis added]

25.    The statements above were materially false and misleading when made, or omitted

material facts because: (1) the Company's earnings were inflated because the Company had failed

to properly reserve for losses in the value of its inventory and for bad debts; (2) the Company's

financial statements were not fairly presented in accordance with GAAP for the same reasons; and

(3) the Company lacked adequate internal and financial controls.

### Defendant Bronfman's Disposal of All SunOpta Holdings

26.    On Decembe r 3, 2007, the Compan y issued a press rel ease entitled " SunOpta

Announces Secondary Share Offering." In the release, the Company, in relevant part, stated:

SunOpta Inc.    (SunOpta) (Nasdaq:STKL) (TSX:SOY) announced today *a public offering by Stephen R  Bronfman, SRB Belvedere Trust and The Charles R. Bronfman Trust (collectively, the "Selling Shareholders") of all of their 5,080,532 common shares of SunOpta.* The Company confirmed that it will not receive any proceeds from the offering and that it has entered into an underwriting agreement at the request of the Selling Shareholders.  The sole underwriter for this offering is BMO Capital Markets Corp.

SunOpta has filed a registration statement with the United States Securities and Exchange Commission (SEC) in connection with the offering of the shares.    The registration statement automatically became effective upon filing because the company is a well-known seasoned issuer.  The shares will be offered for sale by the underwriter to the public only in the United States pursuant to the prospectus.

*Steve Bromley, President and CEO of SunOpta, commented, "The Selling Shareholders have been valued shareholders and partners over the past six years, and I'd like to personally thank them for their significant support of SunOpta over the years.    Their participation came at a very important time in our development as a*

- 13 -

*world class leader in natural, organic and specialty foods. Today, SunOpta is looking at a very bright future, and I want to take this opportunity to welcome the new shareholders this offering brings to SunOpta."* [Emphasis added.]

27.    On December 3, 2007, SunOpta filed a Registration Statement with the SEC on

Form S-3ASR.  The Registration Statement, in relevant part, stated:

## SELLING SECURITY HOLDERS

We will not receive any of the proceeds from the sale of the Shares by the selling security holders.  (See page 16).   The following table sets forth information with respect to Shares owned by such selling security holders. The information regarding Common Shares to be owned after the offering assumes the sale of all Shares offered by the selling security holders by this Prospectus.

| Name of Selling Security Holder | Number of Shares Held Prior to Offering | Number of Shares being Offered | Number of Shares to be Owned After Offering |
|---|---|---|---|
| Stephen R. Bronfman | 4,550,000 | 4,550,000 | 0 |
| Charles R. Bronfman | 109,818 | 109,818 | 0 |
| SRB Belvedere Trust | 420,714 | 420,714 | 0 |
| **Total** | **5,080,532** | **5,080,532** | **0** |

\*            \*            \*

## CONSENT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

We hereby consent to the incorporation by reference in the Registration Statement on Form S-3 of our report dated February 22, 2007 relating to the financial statements, management's assessment of the effectiveness of internal control over financial reporting and the effectiveness of internal control over financial reporting which appears in SunOpta Inc.'s Annual Report on Form 10-K for the year ended December 31, 2006. We also consent to the reference to us under the heading "Experts" in such Registration Statement.

/s/ PricewaterhouseCoopers LLP

Chartered Accountants, Licensed Public Accountants

Mississauga, Ontario

December 3, 2007

28.     Shortly thereafter, on December 20, 2007, the Company issued a press release confirming the sale of stock by Bronfman and announcing his resignation from the Board of Directors.

### The Truth is Revealed

29.     On January 24, 2008, Defendants issued a press release entitled, "SunOpta Provides Update On 2007 Earnings Results." This press release revealed that the Company would likely be restating its earlier filed quarterly reports for its failure to write down and recognize losses in its inventory and for bad debts. The release also revealed that the Company's internal controls were inadequate. The release stated, in pertinent part:

> SunOpta Inc. (Nasdaq:STKL) (TSX:SOY) today provided an indication of expected financial results for 2007.
>
> For fiscal 2007, the Company is expected to realize revenues of slightly over $800 million, exceeding previously provided revenue guidance of $775 to $800 million, an increase of approximately 34% versus 2006. These revenues are reflective of the continued strong demand in the Company's core natural and organic foods business.
>
> ***Earnings for the year are expected to be in the range of $0.12 to $0.14 per diluted common share and have been impacted by significant issues within the SunOpta Fruit and SunOpta BioProcess Groups which have led to significant write downs and provisions in the range of $12 to $14 million pre-tax. The Company is currently analyzing the impact of the adjustments*** related to the SunOpta Fruit Group berry operations, including the potential impact on previously issued fiscal 2007 financial statements ***which will likely result in the restatement of previous quarters.***
>
> ***The Company has determined that inventories within the SunOpta Fruit Group's berry operations require write-down to net realizable value and preliminary estimates indicate that an adjustment in the range of $9 to $11 million for this issue and related items is necessary. Upon becoming aware of this issue, the Company has initiated a number of immediate and specific actions including engagement of an independent third party by the Company's audit committee to assess internal controls and processes, and implementation of a series of specific pricing and cost related actions to address potential causes of this issue.*** The Company's testing and analysis is ongoing and there can

be no assurance that further adjustments will not be required.

*Included in the updated earnings estimate for the year is a provision of approximately $3 million pre-tax, related to difficulties in collecting for services and equipment provided to a customer under the terms of an existing equipment supply contract within the SunOpta BioProcess Group.* The Company also has knowledge that the customer's US affiliate is in violation of a Technical Development Agreement which delineates the intellectual property of each of the parties. As a result of failed discussions to resolve these issues, the Company has taken legal action to protect its intellectual property and recover costs, and thus feels it is necessary to reserve for uncollected amounts.

The balance of the Company's core food group operations performed extremely well throughout the year. The SunOpta Grains and Foods Group, SunOpta Ingredients Group, SunOpta Distribution Group and global sourcing operations within the SunOpta Fruit Group all reported strong results, well ahead of the prior year. Opta Minerals Inc. continues to perform well but has been somewhat impacted by cyclical weak economic conditions which are impacting the steel and foundry industries. Even with the tough economic conditions, the business is expected to realize earnings in the same range as the prior year. SunOpta BioProcess continued to invest in expansion of its operations throughout the year and in doing so is now well positioned for the future. *Given the issues within the SunOpta Fruit Group's berry operations, the Company has decided to fully assess the short and long term impact of the root causes behind the issues identified before providing 2008 revenue and earnings guidance. This analysis is currently ongoing. The Company remains very confident in its strategic positioning and the outlook for the business, but believes it is most prudent to complete this analysis in order to ensure that the guidance provided is as accurate as possible.* [Emphasis added.]

30.     This news shocked investors. In response to this announcement, on the following trading day, the Company's shares fell $3.51 per share, or 36.72 percent, to close on January 25, 2008 at $6.05 per share, on unusually heavy trading volume.

31.     On January 25, 2008, the Associated Press published an article entitled, "SunOpta Shares Drop on Guidance Cut" describing the fallout caused by the Company's revelations. The article, in relevant part, stated:

**SunOpta Shares Plummet After Company Slashes 2007 Guidance, Blaming Write-Downs**

NEW YORK (AP) -- Shares of Toronto-based SunOpta Inc. hit a 52-week low Friday after the company dramatically cut its 2007 profit prediction and said it likely will have to restate results for prior quarters.

*In heavy morning trading, SunOpta's U.S. shares plummeted $3.72, or 39 percent, to $5.84, after dropping as low as $5.71 earlier in the day and easily passing its previous low of $8.47. SunOpta, which processes and produces organic foods, said it expects to post a profit of 12 cents to 14 cents per share for the year, citing issues within its fruit and BioProcess groups that led to pretax write-downs and provisions of $12 million to $14 million.*

*The company had previously projected a profit of 35 cents to 40 cents per share for the year. Analysts polled by Thomson Financial expect a profit of 34 cents per share.*

*SunOpta said it's analyzing the impact of the adjustments related to its fruit group berry operations, including the potential impact on previously issued fiscal 2007 financial results, which will likely result in the restatement of previous quarters.*

The company also boosted its revenue prediction for the year to slightly ove r $800 m illion, up from its pr evious guidanc e o f $775 million to $800 million, citing continued strong demand in its core natural and organic foods business.

Analysts, on average, expect revenue of $795.8 million for the year. [Emphasis added.]

## FALSE STATEMENTS

32.    The press releases and financial statements issued by SunOpta during the Class Period were false and misleading because they misstated earnings and falsely represented that they fairly reported the Company's results of operations in accordance with GAAP. Based on information available and known by Defendants at the time, losses should have been recognized for write-downs of the Company's inventory and for bad debts – that is why the Company announced on January 24, 2008 that these items would "likely result in the restatement of previous quarters."

33.    GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. §210.4-01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. §210.10-01(a).

34.    Due to these accounting improprieties, the Company reported its financial results in a manner which violated GAAP, including the following fundamental accounting principles:

a.    The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions (FASB Statement of Concepts No. 1, ¶34);

b.    The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events and circumstances that change resources and claims to those resources (FASB Statement of Concepts No. 1, ¶40);

c.    The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it. To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, ¶50);

        d.     The principle that financial reporting should provide information about an enterprise's financial performance during a period. Investors and creditors often use information about the past to help in assessing the prospects of an enterprise. Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, ¶42);

        e.     The principle that financial reporting should be reliable in that it represents what it purports to represent. That information should be reliable as well as relevant is a notion that is central to accounting (FASB Statement of Concepts No. 2, ¶¶58-59);

        f.     The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions (FASB Statement of Concepts No. 2, ¶79); and

        g.     The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered. The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶95, 97).

        h.     The principle that an estimated loss from a loss contingency "shall be accrued by a charge to income" if (i) "Information available prior to issuance of the financial statements indicates that it is probable that an asset had been impaired or a liability had been incurred at the date of the financial statements", and (ii) "[t]he amount of loss can be reasonably estimated" (SFAS No. 5 ¶8).

     35.     Further, the undisclosed adverse information concealed by defendants during the Class Period is the type of information which, because of SEC regulations, regulations of the

national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

36.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased SunOpta's securities between August 8, 2007 and January 25, 2008, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

37.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, SunOpta's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by SunOpta or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct.

39.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

40.    Common questions of law and  fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

       a.     whether the federal securities laws were violated by defendants' acts as alleged herein;

       b.     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the financial performance, operations and management of SunOpta; and

       c.     to what extent the members of the Class have sustained damages and the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## LOSS CAUSATION/ECONOMIC DAMAGES

42.     Defendants' false and misleading statements and omissions had the intended effect and caused SunOpta stock to trade at artificially inflated levels throughout the Class Period.

43.     The decline in the price of SunOpta stock on January 25, 2008 was the direct result of the unraveling of Defendants' fraud as the truth was disclosed and was absorbed by the market. The timing and magnitude of the SunOpta stock price declines negate any inference that the loss suffered by Plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants'

fraudulent conduct.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## FRAUD-ON-THE-MARKET DOCTRINE

44.    At all relevant times, the market for SunOpta was an efficient market, for the following reasons, among others:

a.    SunOpta met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b.    As a regulated issuer, Defendants filed periodic public reports with the SEC; and

c.    Defendants regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

45.    As a result of the foregoing, the market for the securities of SunOpta promptly digested current information regarding SunOpta from all publicly available sources and reflected such information in stock prices of SunOpta.    Under these circumstances, all persons who purchased or acquired the securities of SunOpta during the Class Period suffered similar injury through their purchase of the aforementioned securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

46.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.    To the extent there were any forward-looking statements, there were no

meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by executive officer(s) of SunOpta who knew that those statements were false when made.

## SCIENTER

47.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company we re materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding SunOpta, their control over, and/or receipt and/or modification of SunOpta's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning SunOpta, participated in the fraudulent scheme alleged herein.

48.    Throughout the Class Period, the Individual Defendants took advantage of the artificially inflated price of the Company's securities by engaging in insider selling. On December 3, 2007, the Company conducted a large insider offering, allowing Defendant Bronfman to dispose of over 4.5 million shares (100% of the Company shares he owned or controlled). As a result, Defendant Bronfman improperly reaped a windfall of over $60 million immediately prior to

- 23 -

his resignation from the Company's Board of Directors.

49.    During the Class Period, with the Company's shares trading at artificially inflated prices, Company insiders sold 4,636,250 shares of the Company's stock for gross proceeds of $61,177,377, including over $60,701,300 in gross proceeds received by the Individual Defendants, as follows:

| Date of Trade | Insider | Number of Shares | Share Price | Gross Proceeds |
|---|---|---|---|---|
| 12/14/2007 | BROMLEY, STEVEN R. | 17,000 | $12.90 - $13.00 | $220,000 |
| 12/14/2007 | BRONFMAN, STEPHEN R. | 29,000 | $13.07 | $379,030 |
| 12/14/2007 | CHHIBA, BENJAMIN | 2,000 | $13 | $26,000 |
| 12/13/2007 | BROMLEY, STEVEN R. | 3,250 | $13.03 | $42,347 |
| 12/7/2007 | BRONFMAN, STEPHEN R. | 4,550,000 | $13.20 | $60,060,000 |
| 8/7/2007 | ROUTH, ALLAN GLEN | 30,000 | $12.67 | $380,000 |
| 8/20/2007 | ING, CYRIL | 5,000 | $14 - $14 | $70,000 |
| | TOTAL: | 4,636,250 | | $61,177,377 |

**FIRST CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

50.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase SunOpta's securities at artificially inflated prices, and to suffer losses when the truth was revealed and the price of the Company's stock dropped.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

52.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for SunOpta's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

53.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to make false statements and/or conceal adverse material information about SunOpta's earnings and performance, as specified herein.

54.    The Defendants employed devices, schemes and artifices to defraud, while in

possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SunOpta's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about SunOpta and its performance and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of SunOpta's securities during the Class Period.

55.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Individual Defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

56.    The Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

ascertain and to disclose such facts, even though such facts were available to them.    Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SunOpta's financial well-being prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial performance and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

57.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of SunOpta's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of SunOpta's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired SunOpta's securities during the Class Period at artificially high prices and were damaged thereby.

58.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the mark etplace kno wn the truth regarding SunOpta actual earnings and performance, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their SunOpta securities, or, if they had

- 27 -

acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

59.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

60.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

61.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.    The Individual Defendants acted as controlling persons of SunOpta within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

63.    The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.    In particular, each of these defendants had direct and supervisory involvement in

- 28 -

the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.      As set forth above, SunOpta and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.      Declaring this action to be a proper class action pursuant to Fed.R.Civ.P. 23;

B.      Awarding Plaintiff and the members of the Class compensatory damages;

C.      Awarding Plaintiff and other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements;

D.      Awarding Plaintiff and other members of the Class any other relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 29, 2008

Respectfully submitted,
SCOTT + SCOTT LLP

By  _____

JUDY SCOLNICK (JS-0827)
29 West 57th Street, 14th Floor
New York, NY 10019

Tel:  (212) 223-6444
Fax: (212) 223-6334
jscolnick@scott-scott.com

David R. Scott (DS-8053)
108 Norwich Avenue
PO Box 192
Colchester, CT  06415
Tel: (860) 537-5537
Fax: (860) 537-4432
drscott@scott-scott.com

Arthur L.  Shingler III
Hal D. Cunningham
600 B Street, Suite 1500
San Diego, California 92101
Tel.: (619) 233-4565
Fax: (619) 233-0508
ashingler@scott-scott.com
hcunningham@scott-scott.com

*Attorneys for Plaintiff*

# PLAINTIFF CERTIFICATION
## PURSUANT TO FEDERAL SECURITIES LAWS

Robert Knox ("Plaintiff"), declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint and authorizes Scott + Scott, LLP, and such co-counsel with whom it deems appropriate to associate, to pursue this action on a contingent-fee basis.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff.s transaction(s) in the **SUNOPTA, INC.** security that is the subject of this action during the Class Period is/are as follows:

| Date | Buy/Sell | No. of Shares | Price Per Share |
|---|---|---|---|
| 01/24/2008 | buy | 200 | 9.54 |
| 01/24/2008 | buy | 50 | 9.5399 |

5. During the three years prior to the date of this Certification, Plaintiff has never served, nor sought to serve, as a class representative in a federal securities fraud case unless such case is otherwise identified below.

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 21st day of February, 2008 at 5:30 PM EST at Parker, CO.

Your Printed Name:  Robert Knox
Signature:                /s/ Robert Knox
Mailing Address:

Telephone Number:
E-mail Address:

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Robert  Knox, Individually and On<br>Behalf of All Others Similarly Situated,<br><br>                              Plaintiff<br><br>        , vs.<br><br>SUNOPTA INC., STEVEN R.  BROMLEY, JOHN<br>H.  DIETRICH and STEPHEN R.  BRONFMAN,<br><br>                              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**STATEMENT OF RELATEDNESS**

This action is related to *Juliar, et al. v. Sunopta Inc. et al.*, No. 08 Civ. 933 in that both cases are suits by shareholders alleging violations of the Securities Exchange Act by SunOpta Inc. and its officers and directors.

Dated: February 29, 2008

Respectfully submitted,
SCOTT + SCOTT LLP


By _____
    JUDY SCOLNICK (JS-0827)
    29 West 57th Street, 14th Floor
    New York, NY 10019
    Tel: (212) 223-6444
    Fax: (212) 223-6334
    jscolnick@scott-scott.com

    David R. Scott (DS-8053)
    108 Norwich Avenue
    PO Box 192
    Colchester, CT 06415
    Tel: (860) 537-5537
    Fax: (860) 537-4432
    drscott@scott-scott.com

    Arthur L. Shingler III
    Hal D. Cunningham
    600 B Street, Suite 1500
    San Diego, California 92101
    Tel.: (619) 233-4565
    Fax: (619) 233-0508
    ashingler@scott-scott.com
    hcunningham@scott-scott.com

    *Attorneys for Plaintiff*